UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| FITZMARK, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 1:18-cv-2495 |
| FREIGHTROVER LLC | ) ) ) |
| Defendant. | ) ) |

**COMPLAINT FOR INJUNCTIVE RELIEF AND ATTORNEYS' FEES**

Plaintiff FitzMark, Inc. ("FitzMark"), for its Complaint for Injunctive Relief and Attorneys' Fees (the "Complaint") against FreightRover LLC f/k/a 1822 Capital LLC ("FreightRover") alleges and states as follows:

**NATURE OF ACTION**

1. FitzMark brings this lawsuit pursuant to 49 U.S.C. § 14707 to enjoin FreightRover from illegally operating in the market for brokerage services in violation of the Federal Motor Carrier Act (the "Act"), 49 U.S.C. §§ 13102, *et seq*.

2. Pursuant to the Act, an entity may provide service as a broker for transportation of property only if that entity is registered as a broker with the Federal Motor Carrier Safety Administration of the United States Department of Transportation ("FMCSA"). 49 U.S.C. § 13901(a). Registration of brokers is governed by 49 U.S.C. § 13904.

3. The Act defines "broker" broadly:

> The term "broker" means a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation.

49 U.S.C. § 13102(2).

4. The Act provides a private cause of action for injured persons to obtain injunctive relief and attorneys' fees for violations of the Act's broker registration requirements:

> If a person provides transportation by motor vehicle or service in clear violation of section 13901-1304 or 13906, a person injured by the transportation or service may bring a civil action to enforce any such section. In a civil action under this subjection, trial is in the judicial district in which the person who violated that section operates.

49 U.S.C. § 14707(a).

5. Plaintiff FitzMark is a registered broker, pursuant to authority granted by the FMCSA. FitzMark arranges transportation services between customers looking to ship goods, on the one hand, and motor carriers who can move goods, on the other hand. FitzMark uses technology that allows customers to arrange for transportation by motor carrier.

6. FreightRover is *not* a registered broker. It has no authority from the FMCSA to operate as a broker in interstate commerce.

7. Notwithstanding that it is illegal for FreightRover to operate as a broker, FreightRover violates the Act by, among other things: (i) arranging transportation services between customers and motor carriers for compensation; and (ii) holding itself out to the public by solicitation, advertisement or otherwise as arranging for transportation by motor carrier for compensation.

8. FreightRover's business-model is predicated on arranging transportation services of property by motor carrier via a technology platform that enables customers and motor carriers to make transportation arrangements (the "Technology").

9. As one example, the Technology allows customers to find motor carriers for less-than-truckload ("LTL") transportation at reduced rates by allegedly using its "volume-buying power to get some of the most competitive prices in the industry."

10. The Technology did not originate with FreightRover. An affiliate of Celedon Group, Inc. ("Celedon") first developed the Technology with the support of Celadon's former President and Chief Operating Officer, Eric Meek ("Meek").

11. Celadon's affiliate operated the Technology and obtained FMCSA authority as a broker. The law requires each entity operating as a broker to have its own FMCSA authority, regardless of whether an affiliate also has a FMCSA authority. There is nothing in the Act that permits an entity to forego registering with the FMCSA just because one of its affiliates has a FMCSA authority. Rather, each entity is measured independently against the Act's registration requirements.

12. In April 2017, Meek resigned from Celedon, amidst the company's announcement that its auditor had lost confidence in Celadon's financial reports.

13. As part of his exit, Meek bought the rights to the Technology and formed his own company, 1822 Capital LLC – which did business as "FreightRover" – to monetize the Technology.[1]

14. On August 10, 2018, 1822 Capital LLC filed articles of amendment with the Indiana Secretary of State to legally change its name to FreightRover LLC. That same day, FreightRover also filed a change of principal office address with the Indiana Secretary of State, legally changing the location of its principal office from New Palestine, Indiana to Indianapolis, Indiana.

15. FrieghtRover, unlike the Celadon affiliate from which it acquired the Technology, did not register with the FMCSA and did not obtain FMCSA authority to operate as a broker. FreightRover has not had FMCSA authority to operate as a broker during the entirety of its operation, including the time period in which its legal name was 1822 Capital LLC.

---

[1] https://www.ibj.com/articles/63891-former-celadon-exec-plans-to-acquire-companys-startup-subsidiary

16.     FitzMark discovered FreightRover's illegal conduct on May 29, 2018, when FreightRover's Vice President of National Accounts, Brian Rafferty, solicited FitzMark's President, Scott Fitzgerald, and answered questions about how FreightRover monetizes the Technology.

17.     Rafferty admitted that FreightRover: (i) arranges for transportation of property via motor carrier using the Technology, and (ii) receives compensation for each shipment that it arranges.  Screen shots of the communications appear below, with Rafferty on the left and Fitzgerald on the right:



18.     Rafferty represented that FreightRover calculates a "small fee" "on each shipment for use of" FreightRover's Technology.  Rafferty did not respond to Fitzgerald's final question: "Sounds like a broker.  Exactly what a broker does. How is this different?"

19.     FreightRover's conduct meets the legal definition of "broker."  FreightRover "sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or

otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." It is illegal for FreightRover to do so without authority from the FMCSA.[2]

20. In addition to Rafferty's representations to FitzMark, FreightRover "holds itself out" to the public as "arranging for transportation by motor carrier for compensation" in violation of 49 U.S.C. §§ 13901 and 13904 by, among other things, advertising its Technology and brokerage services on its publicly-available website, http://www.freightrover.com, which includes, but is not limited to, the following statements:

  i. "Connect to the top 30 largest domestic LTL carriers without wasting time on calls or emails. **Get improved LTL rates**, save time and **keep your freight on the move**;"[3]

  ii. "Our digital freight marketplace lets you post or find loads in minutes. **No pesky rate negotiation required**. It's your load board, your way;"[4]

  iii. "FreightRover's Freight xChange is an automated **freight matching platform** that makes it easy for carriers to find freight, while shippers and 3PLs have access to vetted capacity, complete load visibility, and **easy carrier payments**;"[5]

  iv. "There are no monthly fees, and it is always free to search for loads. **Only pay for the freight you take;**"[6]

---

[2] Since FitzMark notified FreightRover of Rafferty's representations, FreightRover has alleged that Rafferty's representations oversold FreightRover's offerings. Whatever the truth, Rafferty's representations to FitzMark (and potentially others) about FreightRover's business constitute FreightRover "hold[ing] itself out" to the public as "arranging for transportation by motor carrier for compensation" in violation of 49 U.S.C. §§ 13901 and 13904. FreightRover's website and commercial terms independently establish that FreightRover is a "broker."
[3] https://www.freightrover.com
[4] *Id.*
[5] https://www.freightrover.com/new-digital-logistics-space/
[6] https://www.freightrover.com/freight/?6103

5

      v.      "How is FreightRover monetized? Carriers pay a **$14.99 fee per load**;"[7] and

      vi.      "How do I pay carriers? You don't have to! Carriers who select your loads through FreightRover will be paid by one of our financial partners. Carriers can select 24-hour pay (3% fee), 7-day pay (2% fee), or 30-day pay (0% fee). The great news for you is that you only must pay the financial partner on the 29th day. This makes your freight very attractive to carriers by having Quick Pay options and allows you to hold onto your cash without cutting multiple checks to carriers daily."[8]

21.    FreightRover also "holds itself out" to the public as "arranging for transportation by motor carrier for compensation" in violation of 49 U.S.C. §§ 13901 and 13904 by, among other things, publicly detailing its Technology and services in both its April 2018 Shipper Terms and Conditions[9] and its April 2018 Shipper User (Carrier or Payee) Terms and Conditions[10], including, but not limited to, the following statements:

      i.      "The 'Services' include (i) PayEngine; (ii) Freigt Xchange; (iii) SmartLTL; (iv) Carrier Rules Engine; (v) Tracking Services; (vi) LTL Tracking Services; and/or (vii) Imaging Services;"

      ii.      "Certain of the Services are not provided by FreightRover. As such, with respect to such services, **FreightRover serves merely as a conduit**

---

[7] https://www.freightrover.com/help-article/freightrover-monetized/
[8] https://www.freightrover.com/help-article/pay-carriers/
[9] https://www.freightrover.com/wp-content/uploads/2018/05/April-2018-FreightRover-Shipper-Terms-and-Conditions-.docx
[10] https://www.freightrover.com//wp-content/uploads/2016/09/April-2018-Shipper-Platform-User-Carrier-or-Payee-Terms.docx

|      |                                                                                                                                                                                                                                                                                                                                                     |
|------|-----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|      | **through which the Shipper may purchase**, license, or otherwise obtain their use;"                                                                                                                                                                                                                                                                |
| iii. | "To pay all fees and charges for use of the Services, Shipper shall either (i) **provide FreightRover with a valid credit card**; or (ii) **establish with a Supply Chain Finance Provider** approved by FreightRover;"                                                                                                                             |
| iv.  | "Each Shipment processed through the Freight Xchange includes a **Service Fee of $14.99 (or amount designated in your FreightRover Shipper Enterprise Agreement)** as and when, during the Initial Term or Renewal Term;"                                                                                                                            |
| v.   | "For Shipments processed through the Freight Xchange with a credit card, FreightRover will initiate release of the Shipment Rate **less the Service Fee** and less the Credit Card Transaction Fee to a Carrier's bank account from Stripe upon the Shipment being Verified Complete by Shipper;"                                                    |
| vi.  | "For each Shipment a Shipper posts to the SmartLTL, FreightRover will return a rate directly from a Carrier or indirectly through [a] LTL Broker from one or more Carriers that Shipper agrees to pay for transportation of the LTL Shipment . . . **including all fees, if any, from** the LTL Broker and or **FreightRover**;" and                 |
| vii. | "Each Shipment posted to a Freight Xchange will be assigned a rate by the Shipper that will allow Carrier to determine what revenue the Shipment will generate if Carrier successfully completes the delivery *before* Carrier decides whether to accept the Shipment or allows the Carrier to bid a rate through the Bidding Process ("Shipment Rate"). By accepting a Shipment, |

>Carrier agrees to be paid no more than the Shipment Rate associated with that Shipment, less any deductions Carrier has authorized Shipper to take **and any deductions Carrier has authorized FreightRover to take**."

22. The fact that FreightRover holds itself out to the public by "solicitation, advertisement, or otherwise" as selling and arranging for the transportation of property by motor carrier for compensation alone is sufficient to find FreightRover in violation of the Act. *See* 49 U.S.C. §§ 13102(2), 13901, & 13904.

23. FreightRover has been operating illegally as a broker since its founding in April 2017. For sixteen months it has engaged in illegal brokerage activities and has been illegally competing with FitzMark and other legitimate, registered brokers.

24. FreightRover's illegal conduct has injured FitzMark. FreightRover's very act of operating illegally as a broker injures FitzMark by diverting business which otherwise FitzMark would have shared in some amount. In addition, FitzMark has been injured by needlessly having to compete with FreightRover for customers seeking brokerage services. FitzMark has also been injured by needlessly having to compete with FreightRover for employees.

25. Accordingly, FitzMark now files this Complaint to enjoin FreightRover from operating as a broker unless and until it registers with, and obtains authority from, the FMCSA and for recovery of attorneys' fees incurred by FitzMark to enforce the Act.

## PARTIES AND JURISDICTION

26. Plaintiff FitzMark, Inc. is an Indiana corporation with its principal place of business in Indianapolis, Indiana.

27. FreightRover is an Indiana limited liability company with its principal place of business in Indianapolis, Indiana.

28. This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1331, as well as 49 U.S.C. § 14707(a), as this dispute arises out of a federal cause of action specially allowed to a private party. Accordingly, this action arises under the Constitution, laws, or treaties of the United States of America.

29. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to FitzMark's claim occurred in this District, where FitzMark and FreightRover broker and arrange for transportation by motor carrier from their respective offices in Indianapolis, Indiana.

## COUNT I
## VIOLATION OF THE FEDERAL MOTOR CARRIER ACT

30. FitzMark realleges and incorporates the preceding paragraphs of the Complaint.

31. FreightRover has illegally operated and continues to illegally operate as a broker of transportation of property by motor carrier as defined under the Act.

32. FreightRover has failed to register as a broker of transportation by motor carrier and continues to fail to register as a broker, in violation of the Act.

33. The Act authorizes private causes of action for injured persons to obtain injunctive relief and attorneys' fees to enforce the Act's registration requirements. The right of action and available relief is established in 49 U.S.C. § 14707(a)-(c).

34. FreightRover's illegal operations in violation of the Act have injured FitzMark by, among other things, forcing FitzMark to compete with FreightRover for customers of brokerage services and for employees when FreightRover should not have been engaged in any such competition.

35. Unless FreightRover is enjoined from operating as a broker until it has been duly registered to render such services by the FMCSA, FitzMark will continue to sustain injury.

WHEREFORE, Plaintiff FitzMark, Inc. respectfully requests that the Court enter judgment in favor of FitzMark and against Defendant FreightRover LLC: (i) enjoining FreightRover from further violations of the Act; (ii) ordering FrightRover to pay FitzMark's attorneys' fees under 49 U.S.C. § 14707(c); and (iii) granting FitzMark such additional relief as the interests of justice may require, together with interest and all recoverable costs and disbursements.

Dated: August 14, 2018.

Respectfully submitted,

*/s/ Matthew B. Barr*
Matthew B. Barr (#26252-53)
Alexander P. Orlowski (#30794-29)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone: (317) 236-1313
Facsimile: (317) 231-7433
E-mail: matthew.barr@btlaw.com
	aorlowski@btlaw.com

*Attorney for Plaintiff, FitzMark, Inc.*

## CERTIFICATE OF SERVICE

## **IN COMPLIANCE WITH 49 U.S.C. § 14707(b)**

The undersigned hereby confirms that a copy of the foregoing Complaint been served on the Secretary of Transportation this 14th day of August, 2018, by sending a copy of the Complaint via Certified U.S. Mail, return receipt requested, addressed to:

Secretary Chao
U.S. Department of Transportation,
1200 New Jersey Avenue, SE
Washington, DC 20590

*/s/ Matthew B. Barr*